The case today is Peoples of the State of Illinois v. Charles Petty III. We have Van Leer Eckert, B.A.R. the appellant, and we have Ms. Sharon Shanahan for the affiliate, and you may proceed, sir, when you're prepared to. Thank you, Your Honor. Good morning. Good morning. My name is Van Leer Eckert. I'm an attorney in Belleville. I represent the appellant in this matter, Charles Petty. And what we're appealing is a decision from the Clinton County Circuit Court whereby we had filed a motion to suppress the evidence of my client's revoked license, and that motion was denied by the Honorable Judge Dennis Middendorf of the Fourth Circuit. Just briefly, the facts of the case, let me just tell you, this is an incident that occurred on October 18, 2010. What did the Trent-Illinois Police Department do on that day? What they did do was observe my client driving his vehicle, actually driving a vehicle that belonged to his wife, was registered to his wife, only to his wife, and his wife did have a valid license at the time. Observed my client driving the vehicle at 5.45 in the morning. The officer admits in his testimony during the hearing that he was laying in wait for my client to drive by. In fact, testified to get binoculars that morning so he could see exactly where my client pulled out of his driveway, drove by the location where the officer was. The officer immediately pulled in behind him, turned on his emergency lights, and pulled him over. What the officer did not do that morning was that he did not run on that morning of October 18, 2010, a registration check on my client, nor did he run my client's name through the Soundex, nor did he run... If he had... Trenton's a small town. I was just there for a funeral. If he has actual knowledge, need he do that? Is he required to do that particular verification in order to act on actual knowledge that the arresting officer possesses? I believe that he does. I mean, I think that there's case law in the state of Illinois that says that we all know what Terry says and that the officer can have a reasonable suspicion to pull that over. But it goes on to say that that suspicion has to be based on more than a hunch. My position is the actual knowledge that he has, because he didn't run that name that day, is still just a hunch. I have a hunch. I have a sneaking suspicion that this morning, October 18, 2010, Charles Petty still has a revoked license. Would the day before be still a hunch? I mean, aren't we talking about... apparently it was a long-standing period of time that this gentleman had been driving without a license, correct? I believe his license had been revoked a couple years prior, yes. And the officer testified that, yes, he had seen him driving in town prior to that, but had not pulled him over. I don't know. We don't know what knowledge he had or would he obtain that knowledge. But my position is, because he didn't run that day, it's certainly reasonable to assume that my client could have gone out the day before, Your Honor, and gone to the Secretary of State in Springfield and paid the $250 reinstatement fee or had a hearing down here in Mount Vernon and got his license reinstated. What day of the week was that? What's that? Was that a Monday by any chance? You know, I don't know. It was a work day. I know that it was a work day. Okay. Yeah, I could look on my calendar, but I don't know what day it was. Well, I was going to say, otherwise, if it had been a Friday, he would have gotten it. I mean, I think it's just as reasonable to assume that my client could have been reinstated at the time. I mean, there's a case law in the state of Illinois, for example, there's a case that just came out in 2011, people in the state of Illinois v. Derrick Harris out of the 1st Appellate District, which simply said that just because somebody's walking in a high-crime area, that's insufficient to justify a terrorist act. There's lots of cases where it says just because you think somebody's doing something, you think because they're in a certain area that they're committing a crime, you have to have more than just a hunch to stop. But he apparently was aware that he had been committing a crime previously. It's not that he's just driving in a crime-ridden neighborhood and had a valid license. Apparently, he knew that he was driving while revoked prior. He testified, the officer testified that, yes, he had run his name prior to that. He knew that Charles Petty had a revoked license. I think, I guess, the main point of my argument this morning is that I concede the fact that my client had a revoked license. I mean, I think that that's a fact that I can't deny. My question, the question I'm posing to you is, is it justifiable for them to stop him without seeing him committing a criminal offense? He did not run his driver's license that day to determine on that morning if he had a revoked license. He did not do that. The question you're looking, is the term you're looking at reasonable? Is that what you're looking for? Was it reasonable for him to do that? I think it's more, I'm focusing on the second prong of that. Was it, not so much was it reasonable for him to pull him over. You think it was unreasonable. I think it was unreasonable because I think he was acting on a hunch. And I think the case law specifically states that you have to have a reasonable suspicion, but your suspicion has to be based, must be able to articulate some reason more than just a hunch. And here he's working. Didn't he say that he had run in the past and he thought he had a revoked license? That is correct. So that's more than a hunch. You're saying that it has to be close in time, but we don't know what that close in time would be to satisfy you. Is it exactly five minutes before or does it have to be run when he pulls him over? What would satisfy you? I would certainly say that within close proximity, sometime that same day. I mean, I think the Constitution provides guarantees that say you're not, you were entitled to not be unreasonably seized by the government. And in this case, my client didn't commit a traffic violation that morning that was ascertained by the officer at 545 in the morning, nor did the officer run a check of his license to determine that he was revoked. They simply pulled him over based on the fact that a week ago or a year ago or two days before, he had a revoked license. Did he run his license right after he pulled him over? After he pulled him over, he did. But, you know, the case was clear in regards that in People v. Close, which came out in 2010 out of the appellate court, evidence obtained during or after a stop may not be reliant on to justify the stop at its inception. What kind of case was that? That was an appellate court case. It was, I believe it involved. It wasn't a traffic stop. Like driving while licensed revoked. Okay. Exactly the same type of place. It was People v. Illinois Supreme Court issued the ruling, People v. Mark Close, 238 Illinois 2nd, 497. That was a 2010 case. I think I cite that in my brief as well. And that's what I think that the officer did in this case. He went up to my client, obtained, you know, the identification from him, then went back and ran it and said, oh, he's got to, you know, verify the fact that his license was still revoked. He then used that information to justify the stop of my client, to justify the inception or the basis for the stop being okay. Now that I've verified he's revoked, you know, why did he do that beforehand? There's many thousands of reasons why a police officer would do that. I thought he did know he's had a revoked license sometime before that. Sometime before that. Did he say how long that was? He did not say how long before that was. Was he ever asked? You know, I don't believe that I asked him that question. Let's assume the officer had personal knowledge of this person, personal knowledge he had a license, that his license was revoked. Let's also assume that at that morning in question, he did not know whether it had been reinstated. Would that state of knowledge qualify as reasonable suspicion? I think it would qualify as reasonable suspicion, but I again focus on the second part of it, which says that that suspicion must be able to articulate something more than a hunch. And to me, I think he's still acting on a hunch, because he's acting on the assumption that he still has a revoked license. He's not acting on any credible evidence other than prior knowledge. You're saying it's basically stale knowledge. Yeah, that's exactly right. I mean, that's exactly right. Still, to me, that's an assumption. He's acting on the assumption that a week ago he was revoked, so let's not observe any criminal violations. But that's different than the case you cite, that somebody's in a crime-ridden neighborhood, and therefore they're suspicious that they might be committing a crime. Here, we know he was committing the very crime that possibly he was committing again. Yeah, here we know that it is possible that he was driving with a revoked license. But that's all the knowledge that the police officer has. It just doesn't rise to the height that you're saying is required. Yeah, that's exactly right. To get beyond a hunch. That's exactly right. That's exactly what I'm saying. It's an assumption that the officer made that morning, that at 5.45 that morning, he was still revoked. I'm assuming that he's still revoked, so therefore I'm going to seize him. So we're in that kind of vague area between probable cause and reasonable suspicion. That is correct. And I believe that that's what Ms. Shanahan is going to probably. She pointed that out in her brief. And I don't believe that this rises to the level of probable cause. Well, it doesn't have to, does it? Well, I don't think it rises to the level of reasonable suspicion because he's still acting on a hunch. So, I mean, there's a Your basic, your position, and I mean, I'm not, I'm trying to make sure I understand it. Your position is that prior knowledge, which by this time has become stale knowledge, at the date that this happened means that it doesn't rise to the level of reasonable suspicion. That would be my argument, yes. That would be my argument, yes. I mean, how easy would it have been for him to just run the guy's driver's license as soon as he saw him pull out of his driveway? I mean, at that point, okay, he's committing an offense. He's got a revoked license. I call, turn on the emergency lights and pull him over, but that's not what he did. He saw him pull out of his driveway. Didn't do anything. Didn't even observe him commit a traffic violation. You know, other than, you know, I know we can make the argument that driving unrevoked is a violation, but he didn't know that he was revoked at the time he saw him drive. But that's the whole reason he's there to begin with. That is, that is true, yes. Because he suspects that he's going to be driving on a revoked license. Suspects. Why didn't he run his license before he pulled him over? The Constitution says you have to have probable cause to stop somebody. No. I mean, Terry says you have to have reasonable suspicion to stop somebody. And that suspicion, again, must be based on more than an assumption or a hunch. Okay, let's back up then. If he saw him drive before and didn't arrest him? Well, I think the officer testified that, yes, he had seen him drive before. Was that within a year and a half? He could have. Yeah, it was sometime within the prior year. Well, then he could have written a ticket for that, couldn't he? Because you go a year and a half on those? I mean, if he checked off. He could have signed a complaint for a prior driver defense. He certainly could have. The officer testified that he didn't. In the other instances where he had seen my client driving, he had not had the opportunity to pull him over. Well, he didn't have to. Well, you see him driving, understood who he was, write the ticket, and someday you see him before a year and a half, so you can arrest him, can't you? But the basis for this stop was the driving on October 1st. I'm just asking about the other. He could have approached his room another way. Oh, you're saying a year and a half is the statute of limitations? Right. Issue some sort of a warrant? So he could write down the day he had it and then go arrest him at his house? You know, I hadn't thought about that, to be honest with you. Either had I. Either had you, I guess. So you're saying, okay, I see him driving in June of 2010. Yeah. State of Illinois, a certain county, a certain street. And then in June 2010 runs in, determines he's got a revoked license. That day, they write a ticket. Even three months later, it comes back. He certainly could have done that, sure. I mean, I'm sure that he certainly could have done that. He didn't do that. I think that we have to – I mean, the facts here are that he pulled him over based on what I consider to be stale information. Okay. I mean, I – I was just coughing, no question. So, I mean, based on the fact that what I believe the officer was doing was acting on a hunch, acting on an assumption, I don't believe that he had the right to pull my client over. And I believe that the decision of the circuit court, of the Florida Judicial Circuit, should be reversed and that the motion to suppress should be granted. Thank you, Mr. Edgar, for the opportunity to rebut Ms. Shanahan. So when does actual knowledge become so stale that it doesn't reach the point of reasonable suspicion? I don't think we need to reach that point in this case because this was a motion to suppress in which the defendant carried the burden of proof. All he had to do was ask the police officer, when did you last check? Did you check yesterday? Did you check a week ago? Did you check six months ago? Did you check a year ago? That question was never asked. The defendant had the burden of proof in this case to establish that there was no reasonable suspicion, and he did not do that. So I think procedurally that's an extremely important point here. Here's the testimony of Officer Jolenbeck. His sworn testimony says that he knew that the defendant had a revoked driver's license, that he had personal knowledge that the defendant's license was revoked, and that he had run the defendant's license numerous times and it always came back revoked. So that could have been given the fact that this is the defendant's burden to establish that this was an improper stop. The question very easily could have been, when did you last check? But regardless... Well, let me throw in another fact. Licenses can be reinstated. Yes. There's a procedure with the Secretary of State and everything. Since, let's throw that into the equation. If you have prior knowledge, actual knowledge, of a revoked license, being a law enforcement officer, the officer knew that licenses, revoked licenses, can be reinstated. Does that make any difference in your position as to when actual knowledge becomes stale knowledge and therefore does not rise to the level of reasonable suspicion? I would say that, again, we have to put into this, your hypothetical, an unknown finding, which is a time frame. But regardless, which was not established, but regardless, I would say the thing that we need to understand here is that we are not talking about probable cause. As you know, we are talking about reasonable suspicion, which, as I note in my brief, turns on the assessment of probabilities in particular facts, factual context, not readily or even usefully reduced to a neat set of legal rules. It's less than probable cause, and it could be based upon the police officer's factual knowledge based on prior law enforcement experience. And what we need is reasonable suspicion. The defense counsel said, well, he could have called it in. He could have seen him drive out of the driveway and then called it in, and then he would have had reasonable suspicion. He wouldn't have had reasonable suspicion then. He would have known he was seeing a crime being committed right in front of his eyes if he called it in. That would have been probable cause. That's more than probable cause. And what we need is a reasonable suspicion, and it is reasonable to say his driver's license was revoked last week. It might have been reinstated in the last week. But I still have a reasonable suspicion that it's still revoked. It's been revoked. He says he checked it several times. So clearly it was revoked for a long period of time. So I think it's reasonable to say it was revoked then, then, it was revoked then, it was revoked then. So it is a reasonable suspicion, not a hunch, to say it's probably still revoked. And that's what we need is reasonable suspicion, not probable cause, not proof beyond a reasonable doubt, but reasonable suspicion. For example, something that might support the defendant's point of view, let's say the same police officer gave this guy a DUI two years ago. And he's not seen it since. And he sees him and he says, hmm, I wonder if his driver's license is still revoked because of that DUI I gave him two years ago. I'm going to stop him and find out. That's a hunch. That's a hunch. This is not a hunch. You do not need to confirm in order to establish reasonable suspicion. The case that I cite, People v. Aguilar, deals with probable cause, a more stringent standard than we're talking about here. And there the police officers just knew that somebody whose nickname was Grasshopper had been seen leaving the scene and that they knew a guy named Grasshopper. And so they go stop Grasshopper. And they said, yeah, that's probable cause. We don't even need to rise to that level in this case. All we need is a reasonable suspicion. That is an unusual name. Yes. But as you pointed out, this is a small town. And this officer knew the defendant, knew what he looked like, knew it was his house. Knew the car was in his wife's name, I take it. I think registered. He knew that. It doesn't pop into my mind whether he knew that before or after. But I think that's entirely immaterial. The case is cited by defense counsel, Village of Lake and the Hills v. Lloyd and Peeper v. Galvez. If anything, support the state's position because it's rather ludicrous to say that if a police officer knows that a driver has a revoked driver's license and he's driving his own car, then he can stop the car. But if a police officer knows that a driver has a revoked driver's license and he's driving his wife's car, then he can't stop him. And that's the most you can draw from Lloyd and Galvez, is that if a car is registered to one person and there is one person in the car and you don't know who the driver is, then you can presume the revoked driver is driving. If the car is registered to two people and there are two people in the car and you don't know who the driver is, then you don't have reasonable suspicion because it's just as likely that the licensed driver is driving. In this case, it doesn't matter that this case was owned by his wife. It matters that the police officer had actual knowledge that the driver had a revoked driver's license and argued to its extreme. He knew in the recent past, a date that was not determined by the defendant but could have been, he did know that he had a revoked driver's license and at the very least, he had reasonable suspicion to presume that it was still revoked. And for that reason, we believe that the stop was wrong. Any other questions? Thank you, Ms. Jaden. Mr. Tucker, do you have a rebuttal? If you don't... The only rebuttal I would have, Your Honor, is to just say, I would just go back to the fact that I believe that the actual knowledge that he had was scale of time, that it certainly was within his possibility and within his realm that morning to run my client's driver's license before he pulled the bullet. He didn't do that. Do you have the fact scenario in close? What happened there? Because I thought that was just a routine Terry stop. You know, I don't... I've got the case. I don't... Well, just what you remember is it. How do you distinguish that as a not a valid Terry stop? I'm pretty sure that's what it was, yes. Well, we'll get it. Don't worry about it. I believe it was a not a valid Terry stop. I mean, the only other thing I would say is just, you know, I would go to another case that I cited in my brief, which was the Springford case of Delaware v. Prowse. Stopping a vehicle and detaining the driver in order to check the driver's license status is unreasonable under the Fourth Amendment. And I would just say that I believe that this case is right in line with that, that that's in essence what he did was stop my client's vehicle to determine if he still had a remote license. And that's not a constitution. I would ask that he motion suppress the grant. Thanks. Thank you, Mr. Eckert. Ms. Shanahan, we will take the matter under review. Bye.